OPINION OF THE COURT
Arthur D. Spatt, J.
This motion by plaintiff for an order dismissing the affirmative defenses and counterclaim pursuant to CPLR 3212; by Mulholland, Minion, Roe & Clifford, Esqs., the attorneys for plaintiff on the counterclaim, for an order pursuant to CPLR 3211 (subd [a], pars 6, 7) dismissing the counterclaim; by defendant for an order voiding plaintiff’s perference and directing that this action follow the trial of the case entitled Brogan v Zummo; and by plaintiff for an order of preclusion pursuant to CPLR 3042 (subd [d]), are determined as set forth below.
BACKGROUND
On January 20, 1976, the defendant Santina Brogan, a pedestrian, was injured in a three-car auto accident. She retained the plaintiff in this action as her attorney in April, 1976. Plaintiff apparently retained Leland Stuart Beck, Esq., as his counsel, and both attorneys completed the preliminary proceedings and placed the case on the trial calendar. At a pretrial conference, plaintiff received an offer of $25,000 which *889 plaintiff states "was the extent of the total insurance coverage applicable to this accident and her injuries”.
After communicating this offer to defendant, she discharged plaintiff and retained new counsel, who now represents her in the underlying personal injury action as well as in this case.
Plaintiff presented a bill for legal services rendered to the defendant in the sum of $17,500 plus disbursements, which is unpaid, and which is the subject of this lawsuit for legal services rendered in the underlying personal injury case.
Said underlying personal injury case is on the calendar of this court bearing Calendar No. 79H0728; and, according to the calendar clerk, will be reached for trial in January, 1981.
In this present case, after service of the summons and complaint, defendant moved to dismiss, to direct plaintiff to turn over his file and to fix an attorney’s lien. By order dated August 6, 1979 (Spatt, J.), this court directed the turnover of the file and fixed a temporary lien in favor of the plaintiff of 50% of the net attorney’s fees, subject to the determination of plaintiff’s fee in this plenary action.
Thereafter, defendant moved for a protective order as to certain items in the plaintiff’s demand for a bill of particulars with regard to the affirmative defenses, which motion was denied by order of this court dated December 4, 1979 (Lock-man, J.).
Plaintiff has placed this case on the calendar with an application for a preference pursuant to section 785.4 of the Nassau Supreme Court Rules (22 NYCRR 785.4). The court is advised that this case will appear on the calendar for trial on March 10, 1980.
AS TO PLAINTIFF’S MOTIONS TO DISMISS THE AFFIRMATIVE DEFENSES AND THE COUNTERCLAIM AS TO THE FIRST AFFIRMATIVE DEFENSE
The defendant’s first affirmative defense states: "Plaintiff has been compensated in an amount commensurate with his services.”
In paragraph "1” of defendant’s bill of particulars, defendant concedes that, "Plaintiff has received no compensation.” Defendant apparently contends that "no compensation” or "nothing” was commensurate with the value of plaintiff’s services. If that is so, plaintiff’s cause of action will fail. *890 However, since defendant concedes that plaintiff has been paid nothing, this defense has no merit as a matter of law, and is dismissed.
AS TO THE SECOND AFFIRMATIVE DEFENSE
The defendant’s second affirmative defense states: "Plaintiff has received or is entitled to receive full compensation for the services performed by him through the no fault insurance carrier insuring the vehicles.”
In response to plaintiff’s demand for a bill of particulars as to this defense, plaintiff answered, "N.A.”, apparently meaning "not applicable”.
The plaintiff could not receive full, or even part, compensation by a no-fault carrier for his fee for services rendered in a negligence case for personal injuries, pain and suffering and permanency. The attorney’s fees payable from no-fault carriers are fixed after arbitration hearings with regard to disputed medical expenses or loss of earnings. (See Insurance Law, § 675.) There has been no proof offered by defendant of any such arbitration hearings; and even if there were payment of such no-fault attorney’s fees, the legal services sued for herein are separate and apart from such no-fault fees.
The second affirmative defense has no merit as a matter of law, and is dismissed.
AS TO THE THIRD AFFIRMATIVE DEFENSE
The defendant’s third affirmative defense states: "Plaintiff and defendant entered into a written agreement which sets forth the full and exclusive terms of plaintiff’s compensation.”
There is a written retainer agreement dated April 22, 1976, annexed to plaintiff’s motion papers, which provides for a "sliding scale” retainer to plaintiff. This agreement purports to set forth the terms of plaintiff’s compensation for services rendered in the underlying case.
What is the effect of the retainer agreement after an attorney has been discharged? The leading case in this regard is Matter of Tillman (Komar) (259 NY 133, 135) in which the applicable rule of law was stated as follows: "The client is entitled to cancel his contract of retainer but such an agreement cannot be partially abrogated. Either it wholly stands or totally falls. After cancellation, its terms no longer serve to establish the sole standard for the attorney’s compensation. *891 Together with other elements they may, however, be taken into consideration as a guide for ascertaining quantum meruit (Matter of Krooks, 257 N. Y. 329.)”
This rule was recently reiterated by the Appellate Division of this department in Brill v Chien Yuan Kao (61 AD2d 1000, 1001) as follows: "The agreement of retainer cannot be partially abrogated. After cancellation the agreed rate of compensation no longer serves to establish the sole standard for the attorney’s compensation, but may be taken into consideration together with other elements as a guide for ascertaining quantum meruit (Matter of Tillman [Komar], 259 NY 133).”
Since the contract of retainer, while not the sole standard of compensation, may be taken into consideration in ascertaining the quantum meruit recovery of plaintiff; and since this defense asserts a breach of this contract; and since factual allegations of such breach of contract are set forth in defendant’s bill of particulars (see paragraph "6”), this defense raises triable issues of fact which must await trial. The motion to dismiss the third affirmative defense is denied.
AS TO THE FOURTH AFFIRMATIVE DEFENSE
This defense reads as follows: "Plaintiff has breached his agreement with defendant.”
Plaintiff contends that defendant’s substantiation of this defense in her bill of particulars consists of "vague generalities” and defendant "can only state that he failed to provide proper and skillful representation”. The court disagrees. Paragraph "6” of the defendant’s bill of particulars states as follows: "6. Failure to conduct thorough and proper pre-trial investigations, failure to keep client informed of the progress of her lawsuit, failure to monitor the progress of client’s medical treatment and the development of her injuries in a proper, thorough, and competent manner, failure to file proper and accurate pleadings, failure to file a proper ad damnum clause in same, failure to file timely and proper motions, including a motion to amend said ad damnum clause, failure to conduct proper and thorough examinations before trial, failure to refer client to trial counsel capable of providng her competent and proper legal representation, failure to obtain client’s approval before referring her case to trial counsel.”
The facts alleged in paragraph "6” may substantiate the defense of breach of the retainer agreement, and may consti *892 tute a "failure of the performance” by plaintiff on his part. Triable issues of fact permeate this defense requiring a trial and denial of the motion to dismiss this defense.
AS TO THE COUNTERCLAIM
This is a cause of action sounding in legal malpractice. Defendant alleges that plaintiff improperly retained trial counsel without the consent of defendant, "departed from the accepted standards of legal practice”, negligently prepared papers and conducted pretrial discovery, and advised defendant to settle for an amount less than the potential of the lawsuit. There are some specific factual allegations set forth in paragraph "6” of defendant’s bill of particulars. Defendant demands damages in the sum of $1,000,000.
The problem here is that the counterclaim is premature. Since the underlying personal injury action has not yet been reached for trial, nor has it been settled or otherwise terminated, the defendant has incurred no demonstrable damages as yet. This is conceded by defendant’s counsel in his undated affirmation in support of defendant’s motion to void plaintiff’s preference, as follows: "Mr. Pudalov’s attorneys do argue correctly that concrete damages cannot be proved until Ms. Brogan’s prior action, erogan v. zummo, et al (Calendar #79H0728) has been resolved by this Court.”
A necessary element in a cause of action for legal malpractice is damages. Here there can be no legal damages until the underlying case is resolved. Accordingly, the motions to dismiss by plaintiff by his attorney Leland Stuart Beck and his attorneys Mulholland, Minion, Roe & Clifford, Esqs. (on the counterclaim), are granted. This dismissal is not on the merits and is without prejudice to renewal of this legal malpractice cause of action, either by way of suit or counterclaim, after the termination of the underlying personal injury case, or the fixing of damages in any other manner.
AS TO DEFENDANT’S MOTION TO DEFER THE TRIAL OF THIS SUIT UNTIL AFTER THE TRIAL OF THE UNDERLYING PERSONAL INJURY CASE
Defendant contends that her underlying personal injury case should be tried prior to this suit for legal services rendered. To resolve the question of the priority of trial, the court must determine whether, under the facts of this case, *893 plaintiff has a right to try this plenary suit for legal services rendered prior to and without awaiting the determination of the underlying suit.
Going back to the mainstay case of Matter of Tillman (Komar) (259 NY 133, 136, supra), it was stated that: “On the termination of the contract of retainer a cause of action for the reasonable value of his services immediately accrued to the attorney. (Adams v. Fort Plain Bank, 36 N. Y. 255, 260.) Since he is entitled at the present time to enforce his claim by action, he need not, in this proceeding to fix the amount of his lien, be compelled to await the outcome of the litigation from which he has been displaced.”
However, in Matter of Tillman (Komar) (supra, p 136), which also involved a contingent fee, “the client’s right to recover had been established and the litigation was terminated except for computation by a referee of the amounts due”.
The law with regard to priority of trial between an underlying unresolved personal injury case and a substituted attorney’s suit for legal services rendered based on quantum meruit, was further refined in Matter of Szabo v Lipson, Sadow & Marcus (45 AD2d 1014), wherein it was held: “ 'When a client discharges his attorney without cause, the attorney is entitled to have his compensation determined in a fixed dollar amount, presently payable or secured by a lien on the cause of action, based on the reasonable value of his services’ (Shelbourne Garage v. Licht, 34 A D 2d 563, and cases cited therein).” (Emphasis supplied.)
Here, the client contends that the plaintiff was discharged with cause and, in fact, has commenced a legal malpractice action against him by way of counterclaim herein dismissed without prejudice as being premature. Defendant has buttressed his charges of “cause” with specific allegations of departures from accepted practice and breach of contract.
The right of a substituted attorney to an immediate fixing of his fee, conditioned upon his being discharged "without cause”, is restated in Brill v Chien Yuan Kao (61 AD2d 1000, 1001, supra) as follows: "Where an attorney retained for a specific purpose under an express contract is discharged without cause before completion of the agreed-for services, the attorney’s right to recovery is limited to a cause of action in quantum meruit for services rendered up to the time of the *894 discharge (Martin v Camp [219 NY 170], supra).” (Emphasis supplied.)
This priority rule, with regard to discharge of an attorney without cause, is referred to in Reubenbaum v B. & H. Express (6 AD2d 47, 48) as follows: "The client always has the right to discharge his attorney, even without cause. When this happens, the attorney is entitled to compensation, determined by quantum meruit, whether that be more or less than that provided in the contract or retainer between the attorney and client.”
And in Reilly v Millcount Realty Corp. (71 AD2d 884) the rule is set forth as follows: "A client may, of course, discharge his attorney for no valid reason. (Reubenbaum v B. & H. Express, 6 AD2d 47), but when he does so the attorney has the option of asking for an immediate hearing for the fixation of his fee upon a quantum meruit basis (Kern v Karnbach, 27 AD2d 954; Schwed v Parks, 14 AD2d 806) or he may elect to have his fee fixed upon the basis of the final outcome of the litigation (Di Somina v Hyshiver, 38 AD2d 947).” (Emphasis supplied.)
In this case, the plaintiff outgoing attorney has elected to have his fee presently fixed for a sum of money on a quantum meruit basis. He does not want to ask for a percentage fee, also on a quantum meruit basis, which should await the outcome of the underlying lawsuit. (See Reilly v Millcount Realty Corp., supra; Bradbury v Farber, 31 AD2d 824; Finklestein v Cauldwell Wingate Co., 29 AD2d 943.)
Despite plaintiff’s desire to immediately try this action for legal services rendered, this court is of the opinion that the proper procedure, in this case, would be to defer this trial until the conclusion of the underlying lawsuit, by trial, settlement, or otherwise, for the following reasons:
(1) The cases that give plaintiff the right to an immediate trial speak of the discharge of the attorney "without cause”. In this case, defendant asserts that not only was the discharge for cause, but that plaintiff was liable to her for legal malpractice.
(2) It would be manifestly unfair, if not improper, for the court to defer the defendant’s counterclaim for legal malpractice and yet permit the trial of plaintiff’s suit for legal services. The two actions have common questions of law and fact and should be tried together.
*895 (3) Despite plaintiffs urging for an immediate trial for his services rendered on a quantum meruit basis, the evaluation of such services in a personal injury suit clearly, peculiarly lend themselves to easier and more reliable and accurate evaluation, after all the work has been completed, and the disposition ascertained.
Accordingly, the court directs the following:
(1) This action is stayed pending the termination of the underlying personal injury suit; to be placed on the ready day calendar within 60 days after the termination of the underlying personal injury suit. Within 20 days after the termination of the underlying personal injury suit, the defendant is given leave to move to amend her answer to once again interpose the counterclaim for legal malpractice, if appropriate.
(2) Plaintiffs temporary lien of 50% of the net attorney’s fee is to continue, pending the trial of this action.
(3) The attorney for the defendant is directed to notify all defendants and their insurance carriers in the underlying personal injury action of this temporary lien, and defendant shall notify them to place the plaintiff’s name on any check issued in any disposition of the underlying personal injury suit.